PER CURIAM.
A jury found in favor of appellee on his claim of assault and battery, malicious prosecution, slander, false imprisonment, and negligence, and the trial court entered a final judgment accordingly. The defendants at trial, appellants here, have raised several points on appeal, the most significant of which (and the only one which merits discussion) concerns the failure of the trial court to grant a mistrial on the basis of alleged improper and prejudicial conduct on the part of the appellee’s counsel during the course of the trial.
The factual circumstances surrounding the incident giving rise to this dispute were hotly contested by the parties at trial. According to appellee, he went to appellant Southeast Zayre, Inc.’s store in Daytona Beach on July 23, 1974, browsed for a few minutes, and proceeded to a nearby supermarket where he purchased a dozen eggs and some syrup. He then returned shortly thereafter to Zayre’s to purchase some candy for his son. As he was proceeding to the candy section of the store, he noticed a Zayre security guard, appellant James Moso, place a bag further down the aisle in which he was walking. Appellee considered picking up the bag and handing it to appellant Moso, but decided against it, when he noticed several other Zayre employees apparently surveilling the scene. According to appellee, he told Moso and the other employees, in effect, that if he was under investigation for shoplifting, he should not be, because he had not taken anything. Deciding not to purchase candy at the store after all, appellee proceeded toward the exit door. Before he could open the door, Moso grabbed him by the neck and pulled him back. A struggle ensued, during which another Zayre employee, appellant Thomas Hindery, retrieved a .357 pistol from Moso’s car and pointed it at appellee’s head. According to appellee, five Zayre employees at one time or another were pummelling him. He emptied the bag which he had brought in from the supermarket to show that it contained only eggs and syrup, but to no avail. He was finally taken back to the manager’s office and waited for the arrival of the police. He overheard Moso request the investigating officer to inform appellee that appellee would be faced with six criminal charges unless he signed a release. After the investigating officer indicated that he would make no such statement to appel-lee and that he would make no arrest, ap-pellee was permitted to leave.
Appellants’ version of the incident differed drastically from that of appellee. Appellant Moso stated that on appellee’s initial visit to the Zayre store, appellee placed some store property within the bag that he was carrying. After appellee left the store and then returned in a few minutes, Moso placed the shopping bag on or next to the counter near the snack bar. According to Moso, when appellee noticed the Zayre employees watching him as he was about to pick up the bag, he came over to the employees and began cursing them, informing that he was “wise” to them. Moso told appellee to leave the store which he proceeded to do, but not before passing a counter on which packages of underwear were located. Moso testified that appellee took one of the packages and placed it inside the supermarket bag that he had with him. At that point, Moso claims that he merely at *47 tempted to look inside the shopping bag. Before he could so so, appellee began cursing him and eventually initiated a fight. According to Moso, he and the other Zayre employees did not strike appellee, but merely attempted to restrain him. A gun was brought into the store, which was never pointed at appellee but only at the ceiling. Moso claimed that appellee voluntarily went to the manager’s office with him. As was the case with appellee, appellants called additional witnesses to support their version of the incident.
Appellants argue that in the highly contested trial, their case was prejudiced by the conduct of one of appellee’s counsel, Maurice Wagner.[1] Appellants’ argument rests on the manner in which Mr. Wagner examined and cross-examined witnesses. The trial court sustained objections made by appellants’ counsel on the grounds that the question asked was argumentative. At times, Mr. Wagner would, in the guise of asking a question, make personal comments on the witness’ testimony.[2] Mr. Wagner also continued to ask questions to which the trial court has sustained an objection.[3] Counsel for appellant moved for a mistrial which was denied, but Mr. Wagner’s argumentative style of questioning continued unabated. A request by appellant’s counsel for the trial court to at least lay down some guidelines was denied. On the third day of trial, counsel for appellants again moved for a mistrial, to which Mr. Wagner responded that “I have never intentionally asked a question that the court has sustained an objection to. . . .” However, the veracity of that assertion by Mr. Wagner was called into question when just a few minutes later, the following exchange occurred:
“MR. WAGNER:
A. And, if that were the case then he could not have seen Raymond Carswell pick up any merchandise, could he?
MR. CAMERON:
Objection, Your Honor, he is leading.
THE COURT:
Sustain the objection.
MR. WAGNER:
Q. If he were with you there was no way he could have seen Raymond Cars-well pick up merchandize?
MR. CAMERON:
Objection, Your Honor. The same question.
THE COURT:
Sustain the objection.”
Without reciting further examples of argumentative questions and improper com *48 ments to witnesses, we conclude that such conduct on the part of attorney Wagner was so grossly repetitive and prejudicial that a new trial is required. That appellants’ counsel at times asked leading questions to which objections were sustained is no excuse for Mr. Wagner's own conduct. Nor is it valid argument that the factual issues at trial were intensely disputed. An adversary in the furtherance of his client’s interest is entitled, and, indeed obligated to, to forcefully present his theories at trial and thoroughly examine his witnesses as well as vigorously cross-examine the opposing party’s witnesses. However, no counsel is permitted to repeatedly ask argumentative questions after objections to those questions have been sustained, nor is he allowed to comment upon the unfavorable testimony of a witness in the presence of a jury. See Tyus v. Apalachicola Northern Railway Company, 130 So.2d 580 (Fla.1961). Accordingly, this cause is reversed and remanded for a new trial.
REVERSED AND REMANDED.
BOYER, C. J., MILLS, J., and JOPLING, WALLACE, Associate Judge, concur.

. Although a second counsel for appellee, Irwin Connelly, actively participated in the trial of the cause, appellants focus solely on the actions of Mr. Wagner. We consequently limit our consideration to the actions taken by Wagner at trial.

. For example, after appellant Moso answered a question, Wagner observed, “It strikes me that your recollection is rather accurate about matters that are beneficial to you but you can’t remember anything — anything at all that puts you in a bad light or position.”

. Mr. Wagner’s ignoring of the sustaining of an objection to a question is exemplified by the following which occurred during his examination of appellant Moso:
“MR WAGNER:
Q. Incidentally, are you still employed as a security guard in the stores of Volusia County?
A. Yes sir, I am.
Q. Still carrying on the same kind of activity that you were carrying on before?
MR. CAMERON:
Objection. Your Honor that is argumentative and highly irregular.
THE COURT:
Sustain the objection.
MR. WAGNER:
Q. Have you changed your modis operandi?
MR. CAMERON:
Objection, Your Honor.
MR. WAGNER:
Q. Your methods and procedures now?
MR. CAMERON:
Objection.
THE COURT:
Sustain the objection.
MR. WAGNER:
Q. Are you still following the same—
MR. CAMERON:
Objection Your Honor, Do we still have to keep going on and on and on.
THE COURT:
Sustain the objection to that line of questioning. What he does now is immaterial.”